```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                :
WESTPORT INSURANCE CORPORATION,                 :
                                                :      09 Civ. 7433 (SHS)
                                                :
                              Plaintiff,        :      OPINION & ORDER
                                                :
                -against-                       :
                                                :
NAPOLI, KAISER & BERN, ET AL.,                  :
                                                :
                              Defendants,       :
------------------------------------------------------------------x
```

SIDNEY H. STEIN, U.S. District Judge.

This case involves a dispute over whether an insurance company—Westport Insurance Corporation—has the duty to defend its insured—the law firm of Napoli, Kaiser & Bern, LLP (that firm and its predecessor firms who are defendants, "NKB")—in a complaint filed in the Supreme Court of the State of New York captioned *Appel-Hole, et al. v. Wyeth-Ayerst Laboratories, et al.*, Index No. 105122/09.  The parties have cross-moved for summary judgment: Westport seeks a declaration that it has no duty to defend the law firm because the state complaint alleges the law firm engaged in fraud, which is excluded from coverage under Westport's policy with the law firm.  NKB seeks a determination that Westport has a duty to defend the law firm in the state court action.  For the reasons set forth below, plaintiff's motion is denied and defendants' motion is granted.

**I. BACKGROUND**

    A.  Facts

        *1. Procedural History*

Napoli Kaiser & Bern is a law firm that participated in the settlement of certain litigations in New York state courts involving the diet drugs Fen-Phen and Redux.  Westport issued a Lawyers Professional Liability policy to the law firm NKB for the period from February 24, 2001 to February 24, 2002. (Pl.'s Consolidated 56.1 Statement ("Pl.'s 56.1") ¶ 1.)  In November 2001, the law firm of Parker

1

& Waichman ("P&W") filed a lawsuit against NKB alleging that NKB had improperly manipulated diet drug settlements to the detriment of a number of plaintiffs who had been referred to NKB by P&W. (*Id.* ¶ 3.) NKB timely notified Westport that it had been sued and requested that Westport extend coverage to NKB under the policy and defend it in the lawsuit by P&W. (*Id.* ¶ 4.) Westport denied coverage to NKB in connection with the 2001 P&W lawsuit. (*Id.* ¶5.) As a result of Westport's denial of coverage, NKB retained its own legal counsel to defend it in that action. (*Id.* ¶ 6.)

In December 2001, NKB was sued again, this time in federal court in the Southern District of New York in *Davis, Saperstein & Salomon, P.C. v. Paul Napoli, et. al.*, 01 Civ. 11328, in connection with the settlement of other claims in the same diet drug litigations. Again, NKB notified Westport it had been sued, and Westport again refused to defend NKB in that litigation as well. (*Id.* ¶¶ 7-9.) Because Westport denied coverage, NKB again retained legal counsel at its own expense to defend it. That federal action subsequently settled, and NKB obtained releases and discontinuances with prejudice. (*Id.* ¶¶ 10-11.)

Following the commencement of those two actions, NKB sued Westport in the Supreme Court of the State of New York, New York County, seeking to compel Westport to defend it in connection with the November 2001 action brought by P&W in state court. That action was subsequently removed to federal court, and after cross motions for summary judgment were filed, Judge John Koeltl granted summary judgment in favor of NKB and ordered Westport to defend NKB in the P&W action. *See Napoli Kaiser & Bern, LLP v. Westport Ins. Corp.*, 295 F. Supp. 2d 335 (S.D.N.Y. 2003) ("*Napoli I*").

In 2003, NKB was once again named as a defendant in a New York Supreme Court action entitled *Abramova, et al., v. Paul Napoli, et al.*, in which clients referred to NKB by P&W in connection with the New York diet drug litigations alleged essentially the same wrongdoing by NKB as the prior lawsuits. (Pl.'s 56.1 ¶ 14.) Westport has been providing a defense for NKB in that action and has also provided NKB a defense in the P&W litigation pursuant to Judge Koeltl's decision in *Napoli I*. (*Id.* ¶15.)

P&W and the Abramova plaintiffs (the "Intervenors") have subsequently filed an intervenor complaint ("Intervenor Complaint") in the New York diet drug litigation against NKB and related firms and attorneys.  (*Id.* ¶ 16.)  NKB timely notified Westport of the Intervenor Complaint and requested that Westport provide NKB a defense in that action as well.  (*Id.* ¶ 17.)  Once again, Westport refused to defend NKB and disclaimed any duty to indemnify NKB against any judgment which might be rendered against NKB.  (*Id.* ¶ 18.)  Because Westport refused to defend NKB in connection with that lawsuit, NKB retained legal counsel at its own expense.  (*Id.* ¶ 20.)  In August 2009, Westport filed the instant action seeking a declaration from this Court that it is not obligated to provide coverage for NKB in connection with the Intervenor Complaint.

### 2. *The Insurance Policy*

In each of the lawsuits described above, NKB was sued for its conduct as attorneys in settling some of its clients' claims in the New York diet drug litigations.  NKB had purchased a "claims-made" Lawyers Professional Liability Insurance Policy (the "Policy") from Westport.  The Policy provides that Westport will defend and indemnify NKB with respect to claims made during the policy period arising out of legal services rendered by NKB.  The relevant coverage provision states: "The CLAIM must arise by reason of an act, error, omission or PERSONAL INJURY . . . . Coverage shall apply to any such CLAIMS arising out of services rendered or which should have been rendered by any INSURED, and arising out of the conduct of the INSURED'S profession as a lawyer . . . ." (Policy § I.A, Ex. A to Decl. of Kristine A. Heres dated Nov. 25, 2009 ("Heres Decl.").)  The Policy contains an exclusion for "any CLAIM arising out of any dishonest, fraudulent, or malicious acts, errors, omissions, or deliberate misrepresentations."  (*Id.* Exclusion A.)

### 3. *The Underlying Intervenor Complaint*

The Intervenor Complaint alleges that NKB "fraudulently, unfairly, and unjustly" assigned individual settlement amounts to cases where NKB was representing clients directly "far above their actual worth and assigning a settlement value to cases referred from other attorneys . . . for amounts less

3

than their actual worth." (Pl.'s 56.1 ¶ 32; Intervenor Compl., Ex. D to Heres Decl. ¶¶ 44-45.) This conduct allegedly permitted defendants to obtain attorneys' fees "far in excess of what they were entitled to receive," and caused the Intervenors to recover "far less than that to which they were entitled." (Intervenor Compl., Ex. D to Heres Decl. ¶¶ 46, 48.)

The Intervenors also allege that defendants knowingly made a number of misrepresentations to the Intervenors and the New York Supreme Court in order to induce settlements and win court approval of those settlements, including misrepresentations with respect to whether (1) specific individual settlement offers had been made; (2) the settlement offers were fair and reasonable; (3) the settlement offers were final; and (4) board certified medical specialists and a trained nurse had evaluated each case. (*Id.* ¶¶ 51-61.) The Intervenors allege that NKB knew its representations to the Court and the Intervenors were untrue at the time NKB made the statements. (*Id.* ¶ 62.) The Intervenors further allege that NKB also billed fraudulent and improper costs and disbursements in excess of one million dollars. (*Id.* ¶¶ 70-72.)

On their face, the allegations in the Intervenor Complaint are based on fraudulent and intentional misconduct. Specifically, the Intervenors allege that the actions of the defendants were performed with "an improper and evil motive, and with malice, wantonness and dishonesty; they were morally reprehensible; and they entailed outrageous public wrongs." (*Id.* ¶ 94.) The complaint sets forth three causes of action.[1]  First, the Intervenors request an order in state court that would (a) vacate New York Supreme Court's approval of the global settlement reached between NKB and certain clients who were referred to NKB in the diet drug litigation and (b) require NKB to produce certain documents related to the global settlement. Such documents include, for example, a report from a professor of legal ethics, reports from two board certified cardiologists, a report from a registered nurse, and a report from the special master. The second cause of action arises under New York Judiciary Law § 487 and is based on

---

[1] While the present cross motions for summary judgment were pending, the Intervenors filed an amended complaint in the state action. The allegations in the amended complaint are in substance the same as in the original complaint; thus, the filing of the amended complaint does not alter the outcome reached by the Court on the present cross motions.

4

claims of intentional deceit. The Intervenors' third cause of action is for disgorgement of the legal fees NKB received from the New York diet drug settlements. (*Id.* ¶¶ 83-97.)

### B. This Action

The parties agree that the issue for resolution on these cross motions is whether Westport has a duty to defend the claims asserted against NKB in the Intervenor complaint filed on April 10, 2009 in New York state court in *Appel-Hole, et al. v. Wyeth-Ayerst Laboratories*, *et al.*, Index No. 105122/09.

## II. DISCUSSION

### A. Legal Standards

#### 1. *Summary Judgment Standard*

Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Nonetheless, the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). The same standard applies where the parties file cross-motions for summary judgment: "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

#### 2. *Insurer's Duty to Defend*

Under New York law, an insurer's duty to defend is extremely broad and is distinct from the duty to indemnify. *See Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 160 (2d Cir. 2003) (quotation omitted) (finding the duty to defend "exceedingly broader" than duty to indemnify); *Cowan v. Codelia, P.C.*, No. 98 Civ. 5548, 1999 U.S. Dist. LEXIS 17606, 1999 WL 1029729, at *5 (S.D.N.Y.

Nov. 10, 1999); *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984).

To determine whether the duty to defend exists, courts first look to "the allegations within the four corners of the underlying complaint," *Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 91 N.Y.2d 169, 175, 667 N.Y.S.2d 982, 690 N.E.2d 866 (1997), but courts must also look beyond the four corners of the complaint to determine whether there is any potentially covered occurrence, *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65-66, 571 N.Y.S.2d 672, 575 N.E.2d 90 (1991); *see also Park Place Entm't Corp. v. Transcon. Ins. Co.*, 225 F. Supp. 2d 406, 410 n.2 (S.D.N.Y. 2002) (acknowledging that the New York Court of Appeals has broadened protection for insureds by holding that "courts are to look beyond the four corners of the complaint to determine whether there is any potentially covered occurrence."). Thus, the duty to defend exists unless "'there is no possible factual or legal basis on which the insurer will be obligated to indemnify the insured.'" *Maryland Cas. Co.*, 332 F.3d at 160 (quoting *Frontier*, 91 N.Y.2d at 175); *see also Hotel des Artistes, Inc. v. Transamerica. Ins. Co.*, No. 93 Civ. 4563, 1994 U.S. Dist. LEXIS 7800, at *10 (S.D.N.Y. June 13, 1994) (citation and quotation omitted) (same).

To avoid defending the insured based on a policy exclusion, the insurer must show that the allegations in the complaint fall "'*solely* and *entirely* within the policy exclusions, and, further, that the allegations, *in toto,* are subject to no other interpretation.'" *Seaboard Surety Co.*, 64 N.Y.2d at 312 (quoting with emphasis *Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 325, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974)). The insurer thus bears a "heavy burden" to show that the allegations of the complaint cast the pleadings wholly within the exclusions and that there is no possible factual or legal basis for finding liability covered by the policy. *Frontier*, 91 N.Y.2d at 175; *see also Hotel des Artistes*, 1994 U.S. Dist. LEXIS 7800 at *10 ("An insurer seeking to avoid its duty to defend bears a heavy burden, which, in practice, is rarely met" (citing *City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1149 (2d Cir. 1989))). Moreover, "if any of the claims against the insured arguably arise

6

from covered events, the insurer is required to defend the entire action." *Frontier*, 91 N.Y.2d at 175; *see also Hotel des Artistes*, 1994 U.S. Dist. LEXIS 7800 at *11 ("[E]ven if only a single claim in the underlying complaint potentially falls within the indemnity coverage of the policy, the insurer must defend the entire action." (citing *Seaboard Surety Co.*, 64 N.Y.2d at 310)).

> B. <u>Westport Insurance Does Have a Duty to Defend NKB in Connection with the Intervenor Complaint</u>

Westport argues that the claims at issue in the Intervenor Complaint are unambiguously excluded from coverage under the policy and thus it has no duty to defend NKB. In support, Westport argues urges that the court need only examine the "four corners" of the Intervenor Complaint to see that the alleged misconduct falls squarely within the exclusion set forth in Exclusion A. Westport maintains that the Intervenors allege what can only be described as a fraudulent scheme by NKB to manipulate settlement allocations—a scheme allegedly based on a series of intentional misrepresentations and deceptions.

Westport, however, fails to acknowledge that the New York Court of Appeals has broadened the protection for insureds by holding that courts are to look beyond the four corners of the complaint to determine whether there is any potentially covered occurrence. *Fitzpatrick*, 78 N.Y.2d at 65-66. In *Fitzpatrick*, the pleadings did not allege a covered occurrence but the insurer had knowledge of facts demonstrating that the lawsuit did involve such an occurrence, and the court held that there therefore was a duty to defend. In so holding, the Court of Appeals explained that an insurer cannot use a third party's pleadings as a "formal fortress" to avoid its contractual duty to defend the insured. 78 N.Y.2d at 68. Where the underlying complaint does not allege a covered occurrence but the insurer has actual knowledge of facts that indicate the lawsuit does involve a covered event, "wooden application of the 'four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify—clearly an unacceptable result." *Id.* at 66.

Here, it cannot be said that Westport owes no duty to defend as a matter of law. Westport bears a heavy burden of demonstrating that the exclusion in the policy applies. The Court finds that it has not met that burden.

The Intervenor Complaint in the underlying action appears to allege exclusively fraudulent claims. However, Westport has knowledge of the factual circumstances surrounding the underlying alleged misconduct—namely, from the previous litigation Westport brought to avoid defending NKB in actions related to the same alleged misconduct. In its memorandum of law, Westport repeatedly refers to the facts of the prior law suit between it and NKB, *Napoli I*, 295 F. Supp. 2d at 335. In attempting to distinguish the present case from the facts of *Napoli I*, Westport acknowledges that breaches of NKB's fiduciary duties to its clients were alleged in the complaint in the 2003 action, and that NKB was accused of negligence by its clients in connection with NKB's settlement allocations in the New York diet drug litigation. In *Napoli I*, the district court found that those events were covered by the insurance policy—which is the exact same policy at issue here. Therefore, Westport has actual knowledge that there are other possible claims the Intervenors may bring in connection with the factual allegations against NKB and that any negligence or breach of fiduciary duty claims will be covered by the insurance policy pursuant to the district court's ruling in *Napoli I*. *See* 295 F. Supp. at 341.

It is well settled that labels placed on allegations are not controlling. It matters not what name a plaintiff gives to its cause of action: the substance of the factual allegations overrides the form. *See Cole v. O'Tooles, Inc.*, 222 A.D.2d 88, 90 (4th Dep't 1996) (citing *Guidettie v. Pratt Plumbing & Heating*, 55 A.D.2d 720, 721, 389 N.Y.S.2d 170, 170 (3d Dep't 1976)). Moreover, a plaintiff is permitted to prove at trial a theory of liability not specifically pleaded if the pleadings give notice of the transactions or occurrences intended to be proved and the defendant does not demonstrate any prejudice therefrom. *Id.* Here, all the parties involved are aware of the various allegations that the Intervenors may ultimately bring, which are not limited to a fraudulent scheme to manipulate settlement amounts.

While New York Judiciary Law § 487—one of the named causes of actions—mandates that a specific intent greater than negligence must be established for the imposition of civil liability, it does not preclude NKB from ultimately being found liable at trial for a negligent act or omission based on factual allegations in the Intervenor complaint. NKB maintains that it did not know the purported fraudulent statements were false at the time they were made to its clients, and any misstatements that it made were due to innocent mistake. (Ex. 12 to Decl. of Terry Stoltz dated November 9, 2009 ¶ 22.) Because it is possible, perhaps even probable, that the Intervenors may be able to prevail on a lesser theory of negligence, but may not be able to prove the more rigorous allegations of intentional fraud, depending on the facts ultimately adduced at trial, Westport has a duty to defend NKB against the Intervenor Complaint.

### III. CONCLUSION

Westport has a duty to defend NKB because Westport has actual knowledge that there are other possible claims the Intervenors may bring in connection with the factual allegations in the Intervener Complaint and those types of claims have already been determined by another court in this district, *see Napoli I,* to be covered by the plain terms of the insurance policy at issue in this case. Accordingly, plaintiff's motion for summary judgment is denied and defendants' cross-motion is granted. The Clerk of Court shall enter judgment for defendants.

Dated: New York, New York
September 27, 2010

SO ORDERED:

Sidney H. Stein, U.S.D.J.